IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Mr. Joshua Ramseur<br>5269 Cozy Glenn Lane<br>Alexandria, VA 2231<br><br>        Plaintiff,<br><br>       v.<br><br>John Phelan,<br>Secretary of the Navy<br>Office of the Secretary of the Navy<br>1000 Navy Pentagon, Room 4D652<br>Washington, DC 20350<br><br>        Defendant. | Case No: 25-2271<br><br>**COMPLAINT FOR REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

**COMPLAINT FOR REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT**

This action seeks review of two final agency decisions by the Board for Correction of Naval Records (BCNR or "the Board") dated May 29, 2024 and November 11, 2024, denying correction of Mr. Ramseur's military records. By and through his attorneys, Mr. Ramseur states his complaint as follows:

**JURISDICTION AND VENUE**

1. The BCNR's decision is a final agency decision under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et. seq.*

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. Plaintiff raises these claims under Naval Regulations and federal statutes that establish federal question jurisdiction.

3. The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C. § 1552, *et. seq.*, which authorizes and governs the BCNR. Under the APA, the Court may set aside

1

decisions of the BCNR that are arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law or mandatory procedure.

4. This Court has personal jurisdiction over the parties pursuant to 10 U.S.C. § 533.

5. Venue is appropriate in the District of Columbia pursuant to 28 U.S.C. § 1391(e).

## PARTIES

6. Plaintiff, Mr. Joshua Ramseur, is a United States citizen who lives at the above-captioned address. He is a veteran of the United States Navy.

7. Defendant, the Honorable John Phelan, the Secretary of the Navy and head of the Department of the Navy. The BCNR acts on behalf of the Secretary of the Navy.

## STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Mr. Ramseur petitioned the BCNR in April 2023 to request removal of documents from his records and a Special Selection Board. He submitted a second petition in February 2024 to request his involuntary military separation be changed to a permanent medical disability retirement.

9. The BCNR issued final decisions denying Mr. Ramseur's requests on May 29, 2024 and November 11, 2024.

10. Pursuant to 28 U.S.C. § 2401(a), a Plaintiff's claims must be made within six years of accrual.

11. Mr. Ramseur's claims accrued on or about May 29, 2024 and November 11, 2024, when the BCNR issued its final decisions on the merits of the claims presented.

12. Mr. Ramseur has exhausted his administrative remedies. This matter is ripe for judicial review.

## BACKGROUND

13. In August 2007, Mr. Ramseur was appointed as a midshipman in the Navy Reserve Officer Training Corps.

14. In May 2010, Mr. Ramseur was commissioned as a Naval officer. He served on active military duty from May 15, 2010 to March 30, 2022, and received an Honorable discharge.

15. On March 22, 2012, Mr. Ramseur was issued a non-judicial punishment (NJP) and punitive letter of reprimand for driving while intoxicated. The letter stated Mr. Ramseur failed three field sobriety tests; however, it was later determined Mr. Ramseur failed the tests because he was experiencing symptoms of multiple sclerosis (MS), a condition for which he was later diagnosed and as evidenced by a letter from his treating neurologist.

16. On March 26, 2012, Mr. Ramseur appealed the NJP which was submitted on April 2, 2012. In his appeal, Mr. Ramseur explained his blood alcohol content was below the legal limit of 0.8.

17. Mr. Ramseur's commanding officer, CDR Fermin Espinoza, responded to Mr. Ramseur's appeal, stating "the written report provided by Officer Rodriguez detailing ENS Ramseur's failure to perform a battery of Field Sobriety Test is particularly compelling."

18. On April 8, 2013, Mr. Ramseur was diagnosed with MS and shortly after, he was placed on limited duty for a period of sixth months, beginning on May 8, 2013. A report prepared by the Naval Medical Center Medical Evaluation Board (MEB) described Mr. Ramseur's symptoms, writing "weakness, numbness, incoordination."

19. Mr. Ramseur was then placed on a second consecutive period of limited duty.

20. In 2017, Mr. Ramseur was referred to Stanford University Health Neurology & Neurological Sciences Clinic, where the Doctor determined Mr. Ramseur's current medication was not

effective and prescribed Tysabri, which is provided via a two-hour intravenous (IV) infusion received every twenty eight days.

21. Thereafter, Mr. Ramseur's PCM at the Army Health Clinic placed him on a third period of limited duty and submitted him to the Integrated Disability Evaluation System (IDES). Mr. Ramseur was referred to the Physical Evaluation Board (PEB) for a determination of his fitness for duty.

22. On July 10, 2018, an informal PEB found him unfit for continued service due to MS and recommended placement on the Temporary Disability Retired List (TDRL) at a 30% disability evaluation; he was rated at a 70% disability evaluation from the Veterans Administration disability evaluation; and the Board directed Mr. Ramseur to be medically retired.

23. On July 30, 2018, Mr. Ramseur challenged the MEB findings and requested a formal PEB. He argued his treatment as a medical retiree would be the same as his treatment prior to referral to the MEB, thus he could continue serving while was receiving Tysabri.

24. On October 1, 2018, the formal PEB found him fit for continued service if he had access to an infusion every 28 days, but he was designated as not worldwide assignable.

25. After being retained, Mr. Ramseur advanced to the O-4 (Lieutenant Commander) selection board, but was twice non-selected for promotion, prompting involuntary separation proceedings. *See* 10 U.S.C. § 14501.

26. Prior to involuntary separation, Mr. Ramseur was required to complete a pre-separation physical which resulted in referral to the MEB for medical retirement evaluation.

27. Due to the COVID-19 pandemic, Mr. Ramseur's entry into the MEB processing system was delayed.

28. Mr. Ramseur was scheduled to be separated from military service on February 28, 2022.

29. On February 8, 2022, Mr. Ramseur submitted a request to defer separation, based on his medical disability. The Chief of Naval Personnel (CNP) approved a 30-day separation deferral.

30. On February 24, 2022, Mr. Ramseur underwent a separation physical examination which concluded that Mr. Ramseur was "not qualified for separation."

31. Also in February 2022, Mr. Ramseur was placed on a fourth period of limited duty.

32. Mr. Ramseur signed all necessary documents for submission into the VA IDES to start concurrent medical and physical evaluation Board processes at Naval Hospital Camp Pendleton. He was assigned a Physical Evaluation Board Liaison Officer (PEBLO), Tricia Arnett, an IDES attorney, Adrian Rowe, and VA Military Service Coordinator (MSC), Daniel Martinez.

33. On March 28, 2022, the Assistant Secretary of the Navy (ASN) Manpower and Reserve Affairs denied Mr. Ramseur's request to defer separation.

34. Mr. Ramseur was separated on March 30, 2022 with an Honorable discharge. He transferred to the Navy Reserves on March 31, 2022.

35. On April 26, 2022, Mr. Ramseur received notification from the PEBLO that he was next for her intake processing.

36. On April 7, 2023, Mr. Ramseur submitted an application to the BCNR, which was assigned docket number NR20230003044. He requested the BCNR remove the record of NJP and a fitness report[1], and order the convening of a Navy Active Duty Lieutenant Commander Special Selection Board (SSB) so he could be considered for promotion to O-4. With his

---

[1] A fitness report is an evaluation completed by an officer's reporting senior and reviewing officer which reflects the officer's performance and character to a variety of boards.

5

petition, Mr. Ramseur provided a letter from his treating neurologist and an expert medical opinion discussing the exaggerated effects of alcohol upon someone with MS.

37. Mr. Ramseur received an advisory opinion which stated, "After consideration, it has been determined the available evidence provides sufficient support for the request."

38. The BCNR disagreed with advisory opinion, citing a failed nexus between symptoms/side-effects of MS and his BAC at .71, and denied all relief on May 29, 2024.

39. Meanwhile, in February 2024, Mr. Ramseur petitioned the BCNR to request modification of his involuntary separation to permanent disability retirement. His petition was assigned docket number 2057-24.

40. The BCNR denied relief, citing Mr. Ramseur's fitness reports showing he passed physical readiness, and his trait averages were above his peers. The opinion stated, "the fact that you are currently serving at a high level in the Navy Reserve is not the only evidence of your fitness at the time of your discharge. In fact, there is also no indication in available records, and you provided none, that demonstrated that you were unable to perform the duties of your office and rank at the time of your pending discharge."

## CAUSES OF ACTION

### COUNT 1:
### BCNR's Finding that there was no error, inaccuracy or injustice warranting removal of Mr. Ramseur's NJP is Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law

41. Mr. Ramseur repeats and realleges all the allegations set forth above as if fully alleged herein.

42. A prepondance of evidence establishes that Mr. Ramseur was suffering from symptoms of MS, not intoxication, at the time he was subject to NJP for being in physical control of a vehicle while impaired by a substance.

6

43. BCNR's conclusion that removal of the records of NJP is not warranted is arbitrary and capricious, an abuse of discretion, and contrary to law.

## COUNT 2:
### BCNR's Conclusion that there is no error or injustice in Mr. Ramseur's Discharge Without Proper Medical Evaluation from the PEB is Arbitrary and Capricious, an Abuse of Discretion and Contrary to Law

44. Mr. Ramseur repeats and realleges all the allegations set forth above as if fully alleged herein.

45. Navy regulations mandate referral into the Disability Evaluation System and a Medical Evaluation Board rather than discharge if a Navy service member is deemed "unfit for continued Naval service" during the mandatory separation physical.

46. Mr. Ramseur was deemed "unfit for continued Naval service" during his separation physical, but discharged without a Medical Evaluation Board or other processing through the Disability Evaluation System.

47. Navy regulations establish that only a Physical Evaluation Board can determine fitness for duty and disability disposition if a member has a diagnosis that is potentially unfitting.

48. The BCNR concluded that Mr. Ramseur is fit for duty.

49. The BCNR's determination that there was no error in Mr. Ramseur being discharged without a Medical Evaluation Board and/or Physical Evaluation Board, and determination that he is fit for duty, is arbitrary and capricious, an abuse of discretion, and contrary to law.

## REQUEST FOR RELIEF

Wherefore, Mr. Ramseur respectfully requests the Court grant the following relief:

   A. Hold unlawful and vacate the BCNR's decision;

   B. Enter judgment in favor of Mr. Ramseur on all counts of this complaint;

C. Remand the matter to BCNR for further actions in accordance with the Court's findings, decision and order;

D. Award Mr. Ramseur costs and attorney fees to the extent permitted by law; and

E. Award such other relief as the Court deems appropriate.

    Respectfully Submitted,

*/s/ Liz Cen*

Elizabeth M. Candelario, D.C. Bar No. 986218
Kieran McDowell, Bar No. PA 0099
PARLATORE LAW GROUP, LLP